John B. Maher, Esq.
**McKEOWN • VERNIER • PRICE • MAHER**
A Joint Venture of McKeown Price LLP
and Vernier & Maher LLP
**115 Hesler Place, Ground Floor**
**Governor Joseph Flores Building**
**Hagåtña, Guam 96910**
Telephone: (671) 477 7059
Facsimile: (671) 472-5487

**Attorney for Plaintiff**
KAIOH SUISAN CO., LTD.

FILED
DISTRICT COURT OF GUAM
JUL 02 2002
MARY L. M. MORAN
CLERK OF COURT

## IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| KAIOH SUISAN CO., LTD. | CIVIL CASE NO. 02-00015 |
| Plaintiff, | |
| vs. | **DISCLOSURES REQUIRED BY FRCP** |
| | **RULE 26(a)(1)(A) and (B)** |
| TOM T. KAMIYAMA, YOSHIE M. | |
| KAMIYAMA and GUAM YTK CORP., | |
| Defendants. | |

COMES NOW Plaintiff KAIOH SUISAN CO., LTD. ("KAIOH SUISAN") through counsel McKeown • Vernier • Price • Maher, by John B. Maher, Esq., and makes the following Rule 26(a)(1)(A) and (B) disclosures.

### RULE 26(a)(1)(A) DISCLOSURE

1.   Shunsaku Yuasa – c/o McKeown • Vernier • Price • Maher;

-1-

# ORIGINAL

2. Tadashi Narushima – 1-9-5, Tamagawa Setagayaku, Tokyo – (03) 3707-1901;

3. Yoshiki Kuwahara – c/o McKeown Vernier Price Maher; and

4. Dai Kanoh - c/o McKeown Vernier Price Maher.

## RULE 26(a)(1)(B) DISCLOSURE

1. Wire Transfer Confirmation and Wire Payment request dated November 7, 2000 (2 pages);

2. Fax transmittal with corporate logo and address of Guam YTK Corp. and information concerning the bank account of Guam YTK Corp.;

3. Agreement dated March 10, 2001;

4. Undated letter on Guam YTK Corp. letterhead signed by Tom T. Kamiyama;

5. Incorporate Certificate for Guam Kai-Oh Co., Ltd.; and

6. Articles of Incorporation of Guam Kai-Oh Co., Ltd.

Respectfully submitted this 2nd day of July, 2002.

**McKEOWN • VERNIER • PRICE • MAHER**
Attorney for Plaintiff
**KAIOH SUISAN CO., LTD.**


BY: _____

**JOHN B. MAHER**

-2-

# CERTIFICATE OF SERVICE

I, **JOHN B. MAHER**, hereby certify that on the 2nd day of July, 2002, I caused a copy of the annexed **DISCLOSURES REQUIRED BY FRCP RULE 26(a)(1)(A) and (B)** to be served upon Defendants, by delivering and leaving a copy of same to their attorney of record, as follows:

**Phillip Torres, Esq.**
**TEKER CIVILLE TORRES & TANG, PLLC**
**Suite 200, 330 Hernan Cortez Avenue**
**Hagåtña, Guam 96910**

Dated this 2nd day of July, 2002.

**McKEOWN • VERNIER • PRICE • MAHER**
Attorneys for Plaintiff
**KAIOH SUISAN CO., LTD.**

BY: _____
**JOHN B. MAHER, ESQ.**

-3-

# INTERNATIONAL SEAFOOD TRADING, INC.



3600 15th Ave. W., Suite 304 - Seattle, Washington 98119

Tel 206.352.1116 - Fax 206.252.1661

| **To:** | | **From:** | Pauline Chihara |
|---|---|---|---|
| Company: | Guam YTK Corporation | | Int'l Seafood Trading, Inc. |
| Phone: | (671) 649-6961 | Phone | (206) 352-1116 |
| Fax: | (671) 649-7520 | Fax | (206) 352-1661 |
| Date: | 11/07/00 | Pages: | 2 (including cover letter) |

Re: Wire Transfer

We wired US$200,000.00 to your account today. We were informed by our bank that we cannot send money directly to Union Bank of California, Guam therefore, please note that we used Union Bank of California International, New York as the transit bank.

**KeyBank Wire Transfer Department**

```
        KEYBANK                              11/07/00
        WIRE COMMUNICATIONS      AMOUNT:  $   200,000.00
        OH-01-01-0535

WE HAVE DEBITED YOUR ACCOUNT 031479681008781 FOR TRANSFER OF FUNDS.
KEY BANK WASH     /ORG=INTERNATIONAL SEAFOOD TRADING INC;SEATTLE,WA
BK CALIF INTL NYC /CTR/BBK=UNION OF CALIFORNIA BRANCH GUAM BNF=GUAM Y T K
CORP/AC-71820663


        PLEASE DIRECT INQUIRIES TO WIRE
        COMMUNICATIONS AT 1-800-447-3817
        AND REFER TO:  SEQ 001107003374
```

CC: MR. S. YUASA

# WIRE PAYMENT REQUEST

COMPANY : INTERNATIONAL SEAFOOD TRADING, INC.    DATE TO BE PAID : 11/7/2000

WIRE TO:    UNION BANK OF CALIF. INT'L NY
BANK :    UNION BANK OF CALIFORNIA    ABA 026005050    AMOUNT - YEN : _____

BRANCH :    GUAM    AMOUNT (U.S.) : 200,000.00

ABA NUMBER :    EXCHANGE RATE : _____

BENEFICIARY :    GUAM YTK CORPORATION

ACCOUNT NUMBER : 71820663

WIRE FROM:
BANK:    KEYBANK

BRANCH:    SEATTLE MAIN BRANCH

A/C NUMBER:    479681008781

PAID

ENTERED

DESCRIPTION OF PAYMENT: _____

_____

_____

INFO TAKEN BY:    NANETTE    DATE :    11/7/00

TEST CODE : _____    REF :    33314

| DESCRIPTION | GL ACCT # | SPECIE / TRIP | YEN AMOUNT | EST. DOLLARS @ _____ /YEN | ACTUAL DOLLARS |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

REQUESTED BY    /    DATE        APPROVED BY    /    DATE    11/7/00

COPY OF WIRE REQUESTED:    PAULINE

4252835417    IN.. SEAFOOD TRADING    F-264 T-..    P-005    MAR 21 '02 10:16

PAGE 01

GUAM YTK CORP    6716497520    10/31/2000 07:30.

**Guam YTK Corporation**
General Development Industry
P.O.BOX 2414
OMF, GUAM 96921 U.S.A.
PHONE: 649-9611 • FAX: (671) 649-7520
Y.T.K. Marine Precision

Guam YTK Corporation

ACCOUNT. NO: 71820663.

UNION BANK OF CALIFORINIA
GUAM. BRANCH
194 HERNAN CORTES AVENUE.
AGANA, GUAM 96910
U.S.A.

( original )

# AGREEMENT

This agreement dated this *10th* day of March, 2001 is made between and among Kaioh Suisan Co., Ltd., located at 2-11-26, Tsukiji, Chuo-Ku, Tokyo, Japan and Mr. Tom T. Kamiyama and his wife Mrs. Yoshie M. Kamiyama, both reside at Barrigada, Guam, U.S.A.

1. At the time of establishment of the corporation named " Guam Kaioh Co., Ltd." for the purpose of operating fishery and fishing related business in Guam, Kaioh Suisan Co., Ltd. has made a personal loan to Mr. And Mrs. Kamiyama in November, 2000, the amount of US$70,000.00 for Mr. Kamiyama and US$10,000.00 to Mrs. Kamiyama in order to take their shares within the total capital of US$200,000.00.

2. With regard to this loan, Mr. And Mrs. Kamiyama hereby accepted and confirmed the fact of loan at no interest and those repayments shall be made when Guam Kaioh Co., Ltd. becomes to make enough gains in business and so that the corporation dividend will be possible.


Kaioh Suisan Co., Ltd.
Yoshiki Kuwahara
Chairman

Tom T. Kamiyama


Kaioh Suisan Co., Ltd.
Shunsaku Yuasa
President

Yoshie M. Kamiyama



# Guam YTK Corporation

**General Development Industry**
P.O. BOX 24134
GMF, GUAM 96921 U.S.A.
PHONE: 649-6961 ▸ FAX: (671) 649-7520
Y.T.K. Marine Products

海王水産株式会社

　桑原　芳樹　様

先般は　お忙しい中　グアムまでお越しいただきありがとうございました。貴殿ご視察のとおり現在グアムは日本及び台湾のまぐろ船の日本への中継基地として発展しつつあります。私共もグアム政府よりやっと漁港（ホテルワーフ）の使用リース権を得てその準備に入っております。　幸運にも鳴島氏の紹介で貴海王水産、桑原会長　および　湯浅社長とお会いする事ができ、又、まぐろ出荷会社を貴社のご協力を得て設立する事が出来、私の念願であったこの仕事もどうにか先が見える様になりました。現在、新しくまぐろの水揚げ場所になる　ホテルワーフ　に仮説の事務所と作業場を作るべく準備しております。今月中には出来上がる予定です。　今後は海王水産と一緒にこのプロジェクトを成功させる為にがんばっていく決意です。

ホテルワーフ（新漁港）の政府との本契約の条件も詰めており、諸条件合意の元で無事契約できると思います。

本プロジェクトをスタートする為に政府に対しての権利金および建設準備金の用意を示す必要があり、大変勝手申して申し訳ありませ

んが、準備金として一億円を 2 回に分けてお借りしたくお願い申し

上げます。この金額に対しては私が責任をもってご返済いたします。

又、必要であれば、私の持っている資産を担保として提出できます。

よろしくお願いいたします。


資金必要月/日

   第 1 回　2000 年 12 月 5 日　　　5000 万円

   第 2 回　2000 年 1 月 20 日　　　5000 万円

                        計　　一億円


借入金返済計画

   第 1 回　2000 年 3 月より

   金 *500* 万円を毎月末日までにご返済いたします。又、銀行借

入 及び、その他業者からの権利金が得られた時は残金を一括し

てご返済いたします。ぜひともご協力の程よろしくお願いします。


                          Guam YTK Corporation

                          Tom T Kamiyama



# GOVERNMENT OF GUAM
## Department of Revenue and Taxation

# INCORPORATION CERTIFICATE

This is to certify that the Articles of Incorporation of

GUAM KATHE 1800 LTD.          Charter No. D-13592          in the

have been duly filed and entered in accordance with the Revenue and Taxation Government of Guam.

Records of Articles of Incorporation in          xx 2000 ,

Effective     1:30 PM    , Guam Daylight Saving Time, December 20,     Ltd.

the persons signing said Articles of Incorporation, their associates and successors shall constitute

in body politic and corporate under the name    Guam Kathe 1800 Co., Ltd.

for the term specified in said Articles of Incorporation (fifty years), unless sooner legally dissolved.

In Witness Whereof, I have hereunto subscribed my name officially, and have hereunto impressed my Seal of Office at the City of Agana, Guam U.S.A., on this    20th

day of    December    xx 2000

JOSEPH T. DUENAS
Director of Revenue and Taxation

# ARTICLES OF INCORPORATION

## OF

## GUAM KAI OH CO., LTD.

## TO ALL TO WHOM THESE PRESENTS MAY COME, GREETING:

### *Preamble*

KNOW YE, that we, the undersigned, desiring to become incorporated as a corporation under and in accordance with the laws of Guam, and to obtain the benefits conferred by said laws upon corporations, do hereby mutually agree upon and enter into the following articles of incorporation.

## ARTICLE 1

### *CORPORATE NAME*

§1.1   *Name.* The name of the corporation (the "Corporation") shall be:

" GUAM KAI OH CO., LTD."

## ARTICLE 2

### *PRINCIPAL OFFICE*

§2.1.   *Tamuning Office.* The place of the principal office of the Corporation shall be located in the Municipality of Tamuning, Guam, and there may be such subordinate or branch offices in such place or places within or without Guam as may be deemed necessary or requisite by the board of directors to transact the business of the Corporation, such branch or subordinate offices to be held in the charge of such person or persons as may be appointed by the board of directors.

## ARTICLE 3

### *PURPOSES AND POWERS*

§3.1.   *Purposes.* This Corporation is formed for the principal purpose of operating fishery and fishing related business within Guam.

1

### 3.1.1. *Fishery; Fishing.* To own, operate, run, and manage the business of procuring fresh fish, and other products of the sea, and to obtain fresh fish, and other products of the sea, either by direct ownership and operation of fishing boats, barges, or by purchase on the open market, and to process and preserve fresh fish, and other products of the sea or any parts of those products by all means and methods used in the fishing industry, whether such methods or means shall be by quick freezing, canning, packing, or any other preservative method or means, and to do such other things as are incidental to the business of fishing and the procuring and preserving of fresh fish, and other products of the sea.

### 3.1.2. *Export and import.* To engage in the business of import and export of general merchandise in all foreign and domestic markets, to act as brokers, commission men, factor and agents for buyers and sellers, both foreign and domestic, trading in general merchandise, and mercantile goods and wares. To purchase and sell goods that are permitted by the laws of Guam to be handled in domestic commerce, and world foreign trade. To acquire, use and operate equipment, materials, and supplies, and maintain all things necessary to effect the purpose and objectives that are required in this type of business as above generally described, and to own, operate and maintain, and to sell, mortgage, lease as lessor, and otherwise dispose of retail stores or departments therein and to conduct a general merchandising business therein. To establish and carry on all or any of the business of importers, exporters, manufacturers, warehousemen, merchants, commission agents, contractors, general brokers, storekeepers, carriers, manufacturers' representatives, forwarding agents and traders, both wholesale and retail, or otherwise deal in goods, produce, raw materials, articles and merchandise in all its branches within Guam.

### 3.1.3. *All things necessary.* To these ends, the Corporation is formed to do any and all of the things hereinafter set forth as fully and to the same extent as natural persons might or could do in any part of the world, either as principal or agent, either alone or in association with other corporations, firms or individuals, or by organization of subsidiary corporations, and to do all and everything necessary, suitable, and proper for the accomplishment of any of its purposes or pertaining thereto.

### §3.2. *Additional purposes.* The Corporation shall have as additional purposes:

### 3.2.1. *Borrowing and lending money.* To borrow and lend money and negotiate loans, to draw, accept, endorse, buy and sell promissory notes, bonds, stocks, debentures, coupons, and other securities; to issue on commission, subscribe for, take, acquire, hold, sell, exchange and deal in shares, stocks, bonds, obligations and securities of any government, authority or company, to form, promote, subsidize and assist companies, syndicates or partnerships of all kinds, and to finance and refinance the same.

### 3.2.2. *Buying and selling property.* To purchase, subscribe for, repossess, foreclose upon or otherwise acquire and own, use, sell, assign, transfer, mortgage, pledge, exchange, or otherwise dispose of real and personal property of every kind and description, including shares of

2

stock, bonds, debentures, notes, evidences of indebtedness, and other securities, contracts, or obligations of any corporation or corporations, association or associations, domestic or foreign and to pay therefor in whole or in part, in cash or by exchanging therefor stocks, bonds, or other evidences of indebtedness or securities or to __ __ __ __. __ __ __ __ __ __ __ __ holder of any such real or personal property, stocks, bonds, debentures, notes, *evidences of indebtedness* or other securities, contracts or obligations to receive, collect and dispose of interest, possess and exercise in respect thereof, all the rights, powers and privileges of ownership, including all voting powers on any stock so owned. To aid either by loans or by guaranty of securities or in any manner, any corporation, domestic or foreign, any shares of stock, or any bonds, debentures, evidences of indebtedness or other securities whereof are held by this corporation or in which it shall have any interest, and to do any acts designed to protect, preserve, improve, or enhance the value of any property at any time held by the Corporation or in which it at that time any be interested. TO enter into, make, perform and carry out contracts of any kind for any lawful purpose with any persons, firms, associations or corporations. TO purchase, acquire, lease, own, and enjoy any and all such other property, real and personal, as may be reasonably necessary for the carrying on of the business of the Corporation.

      **3.2.3.** *Buying and selling securities.* To purchase, hold, pledge, transfer, sell, or otherwise dispose of or deal in, the shares of the capital stock, bonds, debentures, notes or other securities or evidences of indebtedness of any corporation, to receive, collect and dispose of dividends, interest or other income on any such securities held by it, and to do any and all acts and things tending to increase the value of such corporation; to issue bonds and secure the same by pledge or deed of trust of or upon any part of such securities or other property held or owned by the Corporation and to sell or pledge such bonds for proper corporate purposes and in the promotion of its corporate business; to purchase, receive, hold and dispose of any securities of any person or corporation, whether such securities shall be bonds, mortgages, debentures, notes, shares of capital stock or otherwise, and in respect to any such securities, to exercise any and all rights and privileges of ownership thereof, and generally to act as investment brokers, agents or principals.

      **3.2.4.** *Promoting.* To carry on and undertake any business undertaking, transaction or operation commonly carried on or undertaken by capitalists, promoters, financiers, concessionaires, contractors, brokers, and commission merchants and any other incidental business which may seem to the Corporation convenient to carry on in connection with the above, or calculated directly or indirectly to enhance the value of or render profitable any of the Corporation's property or rights.

      **3.2.5.** *Improving land.* To purchase, improve, develop, lease, exchange, sell, dispose of, and otherwise deal in and turn to account, real estate, to purchase, lease, build, construct, erect, occupy, and manage buildings of every kind and character whatsoever to finance the purchase, improvement, development and construction of land and buildings belonging to or to be acquired by the Corporation, or any other person, firm or corporation.

3

**3.2.6.** *Doing all things necessary or proper.* To do everything necessary, proper, advisable, or convenient for the accomplishment of any of the purposes, or the attainment of any of the objects or the furtherance of any of the powers herein set forth, either alone or in association with others, and incidental or pertaining to, or growing out of, or connected with, its business or powers; provided, the same be not inconsistent with the laws of Guam.

**§3.3.** *Powers.* In furtherance of the foregoing purposes, the Corporation shall also have the following powers, that is to say:

**3.3.1.** *Lend money.* To lend and advance money or to give credit, with or without security to such persons, firms, or corporations and on such terms as may be thought fit; and if the security, then upon mortgages, deeds or trust, pledges or other hypothecation, or liens upon real, personal or mixed property, or any right or interest therein or thereto.

**3.3.2.** *Corporate succession.* To have succession by its corporate name.

**3.3.3.** *Seal.* To adopt and use a corporate seal, and alter the same at its pleasure.

**3.3.4.** *Agents.* To appoint any such subordinate officers and agents as the business of the Corporation shall require.

**3.3.5.** *Bylaws.* To make and adopt and from time to time amend or repeal bylaws not inconsistent with any existing law for the management of its operations and properties, the election and removal of its officers, the regulation of its affairs and the transfer of its stock, for all other purposes permitted by law.

**3.3.6.** *Real and personal property.* To buy, take leases of, foreclose or repossess or otherwise acquire, hold, own, use, improve, develop, cultivate, grant, bargain, sell, convey, lease, exchange, mortgage, transfer or otherwise dispose of, and in every manner deal in and with real or personal property and any and all interest and rights and privileges therein, as the purposes of the Corporation may require.

**3.3.7.** *Other businesses.* To purchase the business, goodwill and all other property of any individual, firm or corporation, as a going concern, and to assume all its debts, contracts and *obligations; provided,* said business is incidental to the business of the Corporation and is authorized by the powers herein contained.

**3.3.8.** *Borrow money.* To borrow money or otherwise incur indebtedness (which may be in excess of its capital stock), *with or without* security and to secure any indebtedness by mortgage, pledge, hypothecation or other lien upon all or any part of the real or personal property of the Corporation and to execute bonds, promissory notes, bills of exchange, debentures, and other obligations or evidences of indebtedness of all kinds, whether secured or unsecured.

4

3.3.9.  *Purchase securities.*  To purchase, take, receive, subscribe for, or otherwise acquire, own, hold, vote, use, sell, mortgage, lend, pledge or otherwise dispose of and otherwise use and deal in and with shares or other interests in, or obligations of, other domestic or foreign corporations, associations, partnerships, or individuals, or direct or indirect obligations of the United States or of any Government, state, territory, possession, governmental district or municipality or any instrumentality thereof, and while the owner or holder of the same to possess and exercise in respect thereof any and all the rights, powers, and privileges of individual holders or owners, including the right to vote thereon.

3.3.10.  *Purchase own shares.*  To purchase, take, receive, or otherwise acquire, hold, own, pledge, transfer, or otherwise dispose of its own shares of capital *stock; provided that* it shall not purchase its own shares of capital stock when to do so would cause any impairment of its capital; and *provided,* further, that shares of its own capital stock belonging to it shall not be voted upon, directly or indirectly.

3.3.11.  *Issue notes.*  To draw, make, accept, endorse, assign, discount, execute and issue all such bills of exchange, bills of lading, promissory notes, stock and other warrants, and other instruments to be assignable, negotiable or transferrable by delivery or to order, or otherwise, as the business of the Corporation shall require.

3.3.12.  *Promotion of businesses.*  To promote or to aid in any manner financially or otherwise any corporation or association and for this purpose to enter into plans of reorganization or readjustment and to guarantee the whole or any part of the indebtedness and obligations of any such other corporation or association and the payment of dividends on its stock, and to do any other act or thing, designed to protect, preserve, improve, or enhance the value of such stock or obligations.

3.3.13.  *Promotion of charities.*  To promote, assist, subscribe, or contribute to any association, organization, society, company, institution or object, charitable or otherwise, calculated to benefit the Corporation or any person in its employ or having dealings with the Corporation, or deemed to be for the common or public welfare, including, the erection, operation and maintenance or the aiding and assisting of hospitals, surgeries, clinics and laboratories.

3.3.14  *Mergers.*  To become a party to effect a merger or consolidation with another corporation or other corporations, and to enter into agreements and relationships not in contravention of law with any person, firm or corporation.

3.3.15.  *Surety.*  To become surety for or guarantee any dividends, bonds, stocks, contracts, debts, or other obligations, or undertakings of any other person, firm, or corporation, and to convey, transfer or assign by way of pledge or mortgage all or any of the Corporation's property or rights both present and future, to secure the debts or obligations, present or future, of such person, firm or corporation and on such terms and conditions as the Corporation may determine.

5

3.3.16. *Tax benefits.* To apply for and receive tax benefits, rebates, abatements, credits and moratoriums as authorized by the laws of Guam or other jurisdiction in which the Corporation is engaged in business.

3.3.17. *Agency.* To do all or any of the above things in any part of the world, directly or indirectly, and as principal, agent, factor, contractor, or otherwise, and by or through trustees, agents, or otherwise, and either alone or in conjunction with others.

§3.4. *Construction of purposes and powers.* The purposes specified herein shall be construed both as purposes and powers and shall be in nowise limited or restricted by reference to, or inference from, the terms of any other clause in this or any other article, but the purposes and powers specified in each of the clauses herein shall be regarded as independent purposes and powers, and the enumeration of specific purposes and powers shall *not* be construed to limit or restrict in any manner the meaning of general terms or of the general powers of the Corporation; nor shall the expression of one thing be deemed to exclude another, although it be of like nature not expressed.

# ARTICLE 4

## CAPITAL STOCK

§4.1. *Capital.* The capital stock of the Corporation shall be Two Hundred Thousand U.S. Dollars ($200,000.00USD) divided into Two Hundred Thousand (200,000) shares of the par value of One U.S. Dollar ($1.00USD) each, all with equal rights, powers, and privileges.

§4.2. *Consideration for shares.* The board of directors is authorized to determine the consideration and the terms and conditions on which shares may be issued, and what portion, if any, is to be paid-in surplus, *subject* to the applicable provisions of these articles and the provisions of law.

§4.3. *Preemptive rights.* Shares of stock in the Corporation shall not be transferred or sold except pursuant to the provisions of Article 5, *infra*, and of the bylaws of the Corporation. The preemptive rights hereinafter described shall be possessed by the holders of all stock, share for share, *without* distinction. The preemptive right of any holder shall be determined by the *ratio* of the issued and outstanding shares of stock held by the holder to *all* the shares of stock issued and outstanding. In offering for sale the balance of the original authorized stock not issued or subscribed, and in cases of any authorization to increase the capital stock of the Corporation, *except* where such authorization be for the purpose of stock dividend, or for the purpose of furnishing shares provided for in conversion privileges of stock authorized, such balance of the original stock or such newly authorized stock shall be offered for subscription to the holders of record of all shares of stock outstanding, (on such date as shall be determined by the board of directors) *in proportion* to the number of shares of such stock held by them respectively, *subject* to such regulation and adjustment as the board of directors may from time to time determine with a view of avoiding the issuance of

6

fractional shares. If the shares be offered for subscription to the stockholders as aforesaid, and at the expiration of any subscription rights, any old or new shares authorized have not been subscribed for, then, an dir either event, the authorized and unissued shares may be issued and sold from time to time for such price and to such persons and on such terms as the board of directors may determine.

§4.4.   *Additional classes.*  The Corporation shall have power from time to time to create an additional class or additional classes of stock, with such preference, voting powers, restrictions and qualifications thereon as shall be fixed in the resolution authorizing the issuance thereof in accordance with law.  The board of directors is authorized to determine the terms and conditions upon which, and the persons to whom authorized unissued shares may be sold.

## ARTICLE 5

### *RESTRICTIONS ON TRANSFERS OF SHARES*

§5.1.   *Offer to Corporation; determination of price.*  No shareholder shall transfer, alienate, or in any way dispose of any share of stock of the Corporation *unless* such share shall first have been offered for sale to the Corporation.  In the event any shareholder proposes to sell or otherwise dispose of all or any part of his shares, he shall sign and deliver to the Corporation a written notice stating his desire to sell and dispose of the designated number of shares.  Such shareholder and the Corporation shall then fix a price per share computed by determining the fair market value of the net assets of the Corporation (*excluding* "goodwill") on the date of such notice, and multiplying the resulting figure by a fraction, the numerator of which shall be one and the denominator of which shall be the number of common shares of the Corporation of the class being, offered issued and outstanding as of the date of such notice.  In the event that the shareholder and the Corporation cannot agree on the price per share, computed as aforesaid, the shareholder and the Corporation each shall appoint an independent arbitrator.  If either the shareholder or the Corporation fails to appoint an arbitrator, the arbitrator appointed by the other shall have power to act alone.  The arbitrator(s) thus selected shall determine the price per share computed as aforesaid, and their or his decision shall, in the absence of fraud or mistake, be final and conclusive on the parties.  In the event the two arbitrators cannot agree on the price per share, the two arbitrators shall together appoint a third arbitrator who shall receive the advice and counsel of the two previously appointed arbitrators, but the decision of the third arbitrator acting alone, as to the price per share computed as aforesaid, shall, in the absence of fraud or mistake, be final, binding, and conclusive on the parties.

§5.2.   *Release of restrictions.*  After the expiration of thirty (30) days from the date the price is fixed, as provided in §5.1, *supra*, the shareholder, if the Corporation shall not have exercised its option to purchase such shares, shall be free to transfer, alienate, or otherwise dispose of such shares, *without* any restriction whatsoever, failure of the Corporation to purchase any share or shares and the sale or transfer thereof to any other person, shall not, as to any future sale or transfer of said share or shares issued in lieu thereof, discharge any such share or shares from the restrictions herein contained.  It is the intent that all restrictions herein contained and imposed upon the sale or transfer of shares shall apply to all shares, of whatever class, whatsoever, or by whomsoever acquired, in the

7

hands of all holders, or owners, whether original shareholders or subsequent purchasers or transferees and whether acquired through the voluntary or involuntary acts of a shareholder or by operation of law and whether a part of the first authorized issue or of any subsequent or increased issue.

§5.3. *Sale or transfer of shares with shareholders' written assent.* Notwithstanding anything, herein to the contrary, *any* or all of the shares of the Corporation may be sold, transferred, or otherwise disposed of, or hypothecated without restriction; *provided*, that the written assent or approval to such proposed sale, transfer, other disposition, or hypothecation is obtained and signed by the holders of not less than all of the shares of the Corporation entitled to vote. All such consents or approvals shall be filed with the secretary of the Corporation.

§5.4. *Transfer restrictions endorsed on share certificates.* There shall appear on all shares certificates a statement of the fact that the shares are subject to restrictions on transfer and a statement referring to this Article 5 for details of such restrictions.

## ARTICLE 6

## *OFFICERS AND DIRECTORS*

§6.1. *Officers.* The officers of the Corporation shall be a president, one (1) or more vice presidents, a secretary or secretaries, and a treasurer. The Corporation may have such additional officers as may be determined in accordance with the bylaws. The officers shall have the powers, perform the duties and be appointed as may be determined in accordance with the bylaws.

§6.2. *Board of directors.* The board of directors of the Corporation (the "Board") shall consist of such number of persons, not less than three (3) nor more than seven (7), as shall be determined in accordance with the bylaws from time to time.

§6.3. *Qualification and election.* The officers of the Corporation, *except* the president, need not be stockholders of the Corporation, but the directors and the president *must* be. The directors shall be elected or appointed in the manner provided by the bylaws.

§6.4. *Vacancies.* Any vacancy among the officers or the Board shall be filled by the Board for the unexpired term thereof.

§6.5. *First officers and directors.* The persons who are the first officers and directors of the Corporation, their residences and addresses are as follows:

8

| Names: | Residences: | Addresses: |
|---|---|---|
| Tom T. Kamiyama<br>President/Director | 135 Golondolina Avenue<br>Barrigada, Guam 96921 | P.O. Box 24134<br>Barrigada, Guam 96921 |
| Yoshiki Kuwahara<br>Vice President/Director | 6-40-11 Honcho Shibuya-ku<br>Tokyo, Japan | P.O. Box 24134<br>Barrigada, Guam 96921 |
| Tadashi Narushima<br>Director | 1-9-5 Tamagawa Setagaya-ku<br>Tokyo, Japan | P.O. Box 24134<br>Barrigada, Guam 96921 |
| Yoshie M. Kamiyama<br>Secretary/Director | 135 Golondolina Avenue<br>Barrigada, Guam 96921 | P.O. Box 24134<br>Barrigada, Guam 96921 |
| Shunsaku Yuasa<br>Treasurer/Director | 2-1-1-2911 Tsukuda Chuo-ku<br>Tokyo, Japan | P.O. Box 24134<br>Barrigada, Guam 96921 |

§6.6.  *Powers of directors.* All the powers and authority of the Corporation shall be vested in and in may be exercised by the Board, except as otherwise provided by law or in these articles of incorporation, and, in furtherance and not in limitation of said general powers, the Board shall have the power to: (i) Acquire and dispose of property (ii) appoint a general manager, branch managers, and such other managers, officers or agents of the corporation as in its judgment the Corporation's business may require, and to confer upon and to delegate to them, by power of attorney or otherwise, such power and authority as it shall determine: (iii) fix the salaries or compensation of any or all of its officers, agents and employees, and in its discretion, require security of any of them for the faithful performance of any of their duties: (iv) declare dividends in accordance with law when it shall deem it expedient: (v) make rules and regulations not inconsistent with law or these articles of incorporation or by the bylaws for the transaction of business: (vi) instruct the officers or agents of the Corporation with respect to, and to authorize the voting of stock; (vii) incur such indebtedness as may be deemed necessary, which indebtedness may exceed the amount of the Corporation's capital stock; (viii) create such committees (including, but not limited to, an executive committee or committees) and designate and confer upon such committees such powers and authority as may by resolution be set forth for the purpose of carrying on or exercising *any* of the powers of the Corporation: (ix) create and set aside reserve funds for any purpose: (x) invest any funds of the Corporation in such securities or other property as it may seem proper: (xi) remove or suspend any officer: and (xii) generally, do any and every lawful act necessary or proper to carry out and into effect the powers, purposes and objects of this Corporation.

§6.7.  *Conflicts of interest.* A director of the Corporation shall not, in the absence of fraud, be disqualified by his office from dealing or contracting, with the Corporation either as a vendor, purchaser or otherwise, nor, in the absence of fraud, shall any transaction or contract of the Corporation be void or voidable or affected by reason of the fact that any director, or any firm of which any director is a member, or any corporation of which any director is an officer, director or

9

stockholder, is in any way interested in such transaction or contract; *provided,* that at the meeting of the Board or of a committee thereof having authority in the premises, authorizing or confirming said contract or transaction, the existence of an interest of such director, firm or corporation is disclosed or is known and there shall be present a quorum of the Board or of the directors constituting such committee, and such contract or transaction shall be approved by such quorum, which Quorum include the director so interested or connected. A general notice spread upon the minutes of a meeting of the board or of any committee thereof that a director, member, officer or stockholder of any firm or corporation, and is to be regarded as interested in any subsequent transaction with such firm or corporation shall be a sufficient disclosure under the foregoing provision, and after such general notice it shall not be necessary to give any special notice relating to any particular transaction with such firm or corporation. Nor shall any director, nor any firm of which any director is an officer, director or stockholder, be liable to account to the Corporation for any profit realized from or through any transaction or contract of the Corporation authorized, confirmed or approved as aforesaid by reason of the fact that such director or any firm of which he is a member or any corporation of which he is a stockholder, director or officer, was interested in such transaction or contract. Directors so interested may be counted when present at meetings of the board of directors or of such committee for the purpose of determining the existence of a quorum. Any contract, transaction or act of the Corporation or of the Board or of any committee thereof (whether or not authorized, confirmed or approved as hereinbefore provided) which shall be ratified by all of the capital stock entitled to vote, at any annual meeting, or any special meeting called for such purpose, shall be valid and binding. Any director of the Corporation may be counted in determining, the existence of a quorum at a meeting to consider any contract or transaction between the Corporation and any subsidiary, parent or other affiliated corporation of which he is also a director or officer and may vote upon any such contract or transaction, which shall not be invalid or otherwise affected by reason of his presence or his vote.

## ARTICLE 7

### SUCCESSION

§7.1. *Fifty year term.* The Corporation shall have succession by its corporate name for the term of fifty (50) years, and as thereafter extended in the manner provided by law, and shall have all the powers herein enumerated or implied herefrom and the powers now provided (or which may be hereafter provided) by law for incorporated companies.

## ARTICLE 8

### SERVICE OF PROCESS AND USAGES

§8.1. *Legal service.* Service of legal process may be made upon the Corporation in the manner provided by law.

10

§8.2. *Usage.* In these articles the masculine gender includes the feminine and neuter, the singular includes the plural, and the word "person" includes corporation, partnership, firm, or association wherever the context so requires.

§8.3. *Captions.* Captions of the articles, sections and subsections of these articles and of its tables of contents are for convenience and reference only, and the words contained therein shall in no way be held to explain, modify, amplify, or aid in the interpretation, construction, or meaning of the provisions of these articles.

## ARTICLE 9

## *LIMITATION OF LIABILITY*

§9.1. *Stockholders' liability.* No stockholder shall be liable for the debts of the Corporation beyond the amount which may be due or unpaid upon any share or shares of stock of the Corporation owned or subscribed by him.

## ARTICLE 10

## *INCORPORATORS*

§10.1. *Names, residences and subscriptions.* The names and residences of the incorporators, who are the persons subscribing, to the capital stock of this Corporation, the amount of stock subscribed, the amount subscribed by each, and the sum paid by each on his subscription, are as follows:

| Names and addresses: | Amounts subscribed: | Amounts paid: |
|---|---|---|
| Tom T. Kamiyama<br>P.O. Box 24134<br>Barrigada, Guam 96921 | 70,000 Shares | $70,000.00USD |
| Yoshiki Kuwahara<br>P.O. Box 24134<br>Barrigada, Guam 96921 | 80,000 Shares | $80,000.00USD |
| Shunsaku Yuasa<br>P.O. Box 24134<br>Barrigada, Guam 96921 | 20,000 Shares | $20,000.00USD |

11

| Names and addresses: | Amounts subscribed: | Amounts paid: |
|---|---|---|
| Tadashi Narushima<br>P.O. Box 24134<br>Barrigada, Guam 96921 | 20,000 Shares | $20,000.00USD |
| Yoshie M. Kamiyama<br>P.O. Box 24134<br>Barrigada, Guam 96921 | 10,000 Shares | $10,000.00USD |

for a total of Two Hundred Thousand (200,000) shares subscribed and Two Hundred Thousand U.S. Dollars ($200,000.00USD), paid in.

### EXECUTION

IN WITNESS WHEREOF, the directors hereinbefore named have hereunto set their hands this _____ day of _____, 2000.

_____
TOM T. KAMIYAMA

_____
YOSHIKI KUWAHARA

_____
TADASHI NARUSHIMA

_____
SHUNSAKU YUASA

_____
YOSHIE M. KAMIYAMA

12